Docket Nos. 56, 59, and 67

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| JODY LUTTER, as individual,<br><br>    Plaintiff,<br><br>        v.<br><br>JNESO, et al.,<br><br>    Defendants. | Civil No. 19-13478 (RMB/KMW)<br><br>**OPINION** |

APPEARANCES:

KING MOENCH HIRNIAK & MEHTA, LLP
By:  Matthew Christopher Moench, Esq.
51 Gibraltar Drive
Suite 2F
Morris Plains, NJ 07950
          *Attorneys for Plaintiff*

KROLL HEINEMAN, LLC
By:  Raymond G. Heineman, Jr, Esq. and Seth Ptasiewicz, Esq.
99 Wood Avenue South
Suite 307
Iselin, NJ 08830
          *Attorneys for Defendant JNESO*

ESSEX COUNTY COUNSEL
By:  Robin E. Magrath, Esq. and Lina Dedulin, Esq.
465 Dr. Martin Luther King Jr. Blvd.
Hall of Records
Room 535
Newark, NJ 07102
          *Attorneys for Defendant County of Essex*

STATE OF NEW JERSEY, OFFICE OF THE ATTORNEY GENERAL
By:  Caroline Genett Jones, Esq.
25 Market Street
P.O. Box 112
Trenton, NJ 08625
                    *Attorney for Defendants Phil Murphy and Gurbir*
                    *Grewal*

STATE OF NEW JERSEY, PUBLIC EMPLOYMENT RELATIONSHOPS COMMISSION
By:  Christine Rose Lucarelli, Esq.
495 West State Street
Trenton, NJ 08625
                    *Attorney for Joel Weisblatt, Paul Bourdeau, Paula*
                    *Voos, John Bonanni, David Jones, and Pasquale*
                    *Paperero*

**BUMB**, UNITED STATES DISTRICT JUDGE:

This case arises from the Supreme Court's decision in Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council 31, 138 S. Ct. 2448 (2018), which held that public-sector unions could no longer deduct compulsory "fair share" agency fees from non-consenting employees.

Plaintiff Jody Lutter is a public employee for Essex County, New Jersey, and a former member of the JNESO union. Plaintiff argues that she had a First Amendment right to resign from the union and cease paying dues at any time, but was prevented from doing so for 11 months because of the New Jersey Workplace Democracy Enhancement Act ("WDEA"), which permits union members to resign their membership only during the 10 days following each anniversary of their employment. She contends the WDEA is unconstitutional. She also seeks a refund of all dues deducted from her pay in the 11-month period between her attempted

resignation and successful one. In general, Defendants respond
that Plaintiff does not have a constitutional right to
immediately resign from the union, and that her monetary claims
are now moot because Defendants have reimbursed all of her
disputed dues.

Presently before the Court are Defendant JNESO's Motion to
Dismiss for Lack of Subject Matter Jurisdiction and for Failure
to State a Claim [Docket No. 56], Defendants Weisblatt, Bourdeau,
Voos, Bonanni, Jones, and Papero's Motion to Dismiss for Lack of
Subject Matter Jurisdiction and for Failure to State a Claim
[Docket No. 59], and Plaintiff's Cross-Motion for Declaration of
Violation of Constitutional Rights [Docket No. 67]. For the
reasons stated herein, Defendants' motions [Docket Nos. 56 and
59] will be GRANTED IN PART, DENIED IN PART, and the Court will
RESERVE JUDMENT on the remaining issues in Defendants' motions.
The Court will also RESERVE JUDGMENT on Plaintiff's motion
[Docket No. 67].

I.    FACTUAL BACKGROUND

  A. The Workplace Democracy Enhancement Act

On May 18, 2018, New Jersey Governor Phil Murphy signed into
law the Workplace Democracy Enhancement Act, P.L.2018, C.15, § 6,
eff. May 18, 2018. In relevant part, this act established a new
procedure for employees seeking to withdraw from public sector
unions-- namely that an employee who had previously "authorized

3

the payroll deduction of fees to employee organizations may
revoke such authorizations by providing written notice to the
public employer during the 10 days following each anniversary
date of their employment." N.J.S.A. § 52:14-15.9e (as amended by
the WDEA). Prior to the WDEA, a public sector employee could
withdraw from their union on either January 1 or July 1 in any
given year. N.J.S.A. § 52:14-15.9e.

**B. The <u>Janus</u> Decision**

On June 27, 2018, after the enactment of the WDEA, the
United States Supreme Court issued its decision in <u>Janus</u>, holding
that "States and public-sector unions may no longer extract
agency fees from nonconsenting employees." <u>Janus</u>, 138 S.Ct. at
2486. In doing so, the Court overturned forty-year-old precedent
from <u>Abood v. Detroit Bd. of Ed.</u>, 431 U.S. 209 (1977), which
permitted public sector unions to compel agency fees from non-
member employees for costs "germane" to collective bargaining, so
long as non-members were not forced to contribute to political or
ideological causes. <u>See</u> <u>Abood</u>, 431 U.S. 235-36. The Court
explained that the framework set forth in <u>Abood</u> failed to
appreciate the inherently political nature of public sector
collective bargaining and "violate[d] the free speech rights of
nonmembers by compelling them to subsidize private speech on
matters of substantial public concern." <u>Janus</u>, 138 S.Ct. at
2460. Moving forward, the Court stated as follows:

> Neither an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay. By agreeing to pay, nonmembers are waiving their First Amendment rights, and such a waiver cannot be presumed. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); see also Knox, 567 U.S., at 312–313, 132 S.Ct. 2277. Rather, to be effective, the waiver must be freely given and shown by "clear and compelling" evidence. Curtis Publishing Co. v. Butts, 388 U.S. 130, 145, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967) (plurality opinion); see also College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd., 527 U.S. 666, 680–682, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999). Unless employees clearly and affirmatively consent before any money is taken from them, this standard cannot be met.

Janus, 138 S. Ct. at 2486. Thus, in practical terms, Janus dictated that unions could not deduct dues from a non-member, unless that non-member clearly and voluntarily consented to have dues withdrawn.

## C. Lutter Facts

Plaintiff is an Essex County public employee working for the Essex County Hospital. [Docket No. 54 at ¶ 1]. In June 2011, she signed a JNESO union membership card which allowed JNESO to deduct union membership dues from her paycheck. [Id. at ¶ 19]. Then, in July 2018, Plaintiff submitted a written request to her employer to cease JNESO membership deductions and withdraw from the union. [Id. at ¶ 21]. The county rejected her request and informed Plaintiff that, pursuant to the WDEA, she could only resign her membership within the 10-day window following her hiring anniversary; so, her next available resignation window

5

began on May 31, 2019. [Id. at ¶ 22]. Consequently, Plaintiff was forced to wait approximately 11 months to renew her request within the 10-day window, which her employer then accepted. [Id. at ¶ 23]. During this approximately 11-month period, Plaintiff was still a member of JNESO and continued to have dues deducted from her pay against her wishes. [Id. at ¶ 22].

Defendants in this matter are (1) JNESO, Plaintiff's former union, (2) the County of Essex, Plaintiff's employer, (3) New Jersey Governor Phil Murphy, in his official capacity, (4) New Jersey Attorney General Gurbir Grewal, in his official capacity, and (5) Joel Weisblatt, Paul Bourdeau, Paula Voos, John Bonanni, David Jones, and Pasquale Paperero, in their official capacities as members of the New Jersey Public Employment Relations Commission. Plaintiff alleges that all Defendants in this matter violated her constitutional right to resign from JNESO as established by Janus.

Plaintiff argues that she has a constitutional right to resign from the union at any time. [See id. at ¶ 26]. She seeks an injunction to prevent JNESO from collecting any dues or fees absent a clear and informed waiver, a refund of any dues paid between her July 2018 resignation request and her June 2019 resignation, and other prospective declaratory relief. [Id. at 7].

6

In the current motions, Defendants make two general arguments. First, they argue that Plaintiff's monetary and declaratory relief claims are moot because JNESO voluntarily refunded all the money that Plaintiff claims was deducted against her will, which it did after this litigation began. [See Docket No. 56-3]. Second, Defendants contend that, if the Court finds this case is not moot, then it should either deny Plaintiff's motion without prejudice or stay this matter pending the appeal of Smith v. New Jersey Educ. Ass'n, 425 F. Supp. 3d 366 (D.N.J. 2019) and Thulen v. Am. Fed'n of State, No. CV1814584RMBAMD, 2019 WL 7207489 (D.N.J. Dec. 27, 2019).

## II. ANALYSIS

The Court first turns to Defendants' mootness arguments. This Court has jurisdiction over "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. The Court can "entertain actions only if they present live disputes, ones in which both sides have a personal stake." Hartnett v. Pennsylvania State Educ. Ass'n, 963 F.3d 301, 305 (3d Cir. 2020). At the start of litigation, this burden rests with the plaintiff, as the party seeking a federal forum. Id. (citing Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016).

Once a plaintiff has established standing, the burden shifts to the opposing party. If a defendant claims that a later development has mooted a case, a practice known as "voluntary

cessation," it bears "[t]he heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to recur." <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167, 170 (2000). Mootness and standing are different concepts. Indeed, "sometimes a suit filed on Monday will be able to proceed even if, because of a development on Tuesday, the suit would have been dismissed for lack of standing if it had been filed on Wednesday. The Tuesday development does not necessarily moot the suit." <u>Hartnett</u>, 963 F.3d at 306

The Third Circuit has explained that courts should be "reluctant to declare a case moot . . . when the defendant argues mootness because of some action it took unilaterally after the litigation began." <u>Id.</u> Voluntary cessation will moot a case only if it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." <u>Fields v. Speaker of Pennsylvania House of Representatives</u>, 936 F.3d 142, 161 (3d Cir. 2019) (quoting <u>Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1</u>, 551 U.S. 701, 719 (2007). Finally, the Third Circuit has noted that Courts should be "skeptical of a claim of mootness when a defendant yields in the face of a court order and assures us that the case is moot because the injury will not recur, yet maintains that its conduct was lawful all along." <u>Hartnett</u>, 963 F.3d at 306.

At issue here is JNESO's deduction of union dues from Plaintiff between her July 2018 attempted resignation and her June 2019 successful resignation, as well as Plaintiff's alleged inability to resign from the union outside of the short window defined by the WDEA. Defendant JNESO argues that it voluntarily refunded all the dues that Plaintiff paid during this time, including fees and interest. Moreover, JNESO contends that Plaintiff can have no reasonable expectation that it will deduct union dues from her salary in the future without her valid consent or her rejoining the union. Thus, Defendants conclude, this case is moot.

In response, Plaintiff argues that JNESO's refund of the disputed membership dues is a rejected settlement offer, that she has not cashed the check, and that an "unaccepted settlement offer has no force." In addition, Plaintiff argues that JNESO's refund does not moot her declaratory relief claims.

As a preliminary matter, the Court notes that Defendants' mootness challenge amounts to a factual attack on the Court's jurisdiction. A factual attack is "is an argument that there is no subject matter jurisdiction because [of] the facts of the case." Constitution Party of Pennsylvania v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014). Defendants argue that this applies here because a subsequent factual development-- JNESO's refund to Plaintiff-- has made this dispute moot. Although the Court is

ordinarily limited to the pleadings when considering a motion to dismiss, that limitation does not apply where there is a mootness chalelenge. Instead, "the District Court may look beyond the pleadings to ascertain the facts" when a party factually challenges the Court's jurisdiction. Id.

With this legal principle in mind, the Court examines the various forms of relief that Plaintiff seeks in her Amended Complaint. The Court will now review each in turn.

First, Plaintiff requests that the Court enjoin Defendants from deducting any non-member dues from her pay in the future unless she affirmatively consents to such collection through a valid Janus waiver. [Docket No. 54]. Plaintiff, however, has not alleged that Defendants ever deducted fees from her pay in this manner. Plaintiff may be challenging the validity of the resignation procedures, but the facts, as Plaintiff alleges them, show that Defendants deducted fees from her pay only when she was a JNESO member. Moreover, Defendants are clearly prohibited from deducting non-member fees under Janus. Therefore, the Court will grant Defendants' motion to dismiss as to this requested relief.

Second, Plaintiff seeks a refund of all the dues she paid between her attempted resignation on July 12, 2018, and her successful resignation approximately 11 months later. Defendants contend, however, that this claim is now moot because they refunded these disputed dues.

Defendants rely on cases that have addressed refunded dues
in similar post-Janus cases-- although none of these cases
specifically concerned New Jersey's WDEA. For example, in Jackson
v. Napolitano, No. 19CV1427-LAB (AHG), 2020 WL 5709284 (S.D. Cal.
Sept. 23, 2020), the Southern District of California held that a
plaintiff's claim for a refund of withheld union dues was mooted
when the union repaid the disputed dues. Jackson, 2020 WL 5709284
at *6. Similarly, in Molina v. Pennsylvania Soc. Serv. Union, 392
F. Supp. 3d 469, 482 (M.D. Pa. 2019), the Middle District of
Pennsylvania held that that a plaintiff's claims for monetary
relief of post-resignation due payments was rendered moot by
defendant's voluntary return of the fees in question. Molina, 392
F. Supp. 3d at 482.

The Court finds these cases persuasive, and thus Plaintiff's
claim for a refund of dues was mooted by JNESO's voluntary refund
of all disputed union dues. Plaintiff cannot now maintain a claim
for dues paid between her attempted resignation and her
successful one. There is no dispute that JNESO's refund of the
post-July 2018 payments was for the full value, including
interest, or that JNESO provided Plaintiff with this money
without any conditions or expectation of reciprocal commitments.
That Plaintiff has chosen not to cash the check does not alter
this outcome. See e.g., Jackson, 2020 WL 5709284, at *5 ("The
fact that Plaintiffs have refused to accept or cash the checks

11

does not change the analysis."). Under these circumstances, JNESO's refund is not a settlement offer, and Plaintiff's claims for monetary relief are now moot. Thus, the Court will grant Defendants' Motion to Dismiss on this claim for relief.

Third, Plaintiff seeks a declaratory judgment that she has a constitutional right to resign from her union at any time. Plaintiff, however, does not address the apparent conflict between this request and the Court's opinion in Smith. In Smith, the Court wrote that it found "no support" for the assertion that "the Janus decision broadly gives union member employees a right to resign their membership at any given time." 425 F.Supp.3d. at 374. It is also unclear, however, what other opportunities Plaintiff may have had to resign. Defendants argue that they are "entitled to inspect, consider, and argue the relevance of Plaintiff's contractual commitments before the Court presumes the unconstitutionality of the WDEA." [Docket No. 84]. The Court agrees. Therefore, the Court will deny Defendants' motion to dismiss as to this claim for relief.

Fourth, Plaintiff requests two forms of prospective declaratory relief-- that the Court declare the WDEA's single, 10-day per year, resignation window void and unenforceable, and that the Court enjoin the Defendant state officials from enforcing the WDEA. Plaintiff also reiterates this request in her pending Motion for a Declaration of a Violation of Constitutional

Rights. [See Docket No. 67]. Defendants argue that Plaintiff has been made whole by their refund and now has no personal stake in the outcome of this dispute. To this point, Defendants contend that Plaintiff, following her successful resignation from JNESO, can have no reasonable expectation that she will be subject to the WDEA's limited resignation window again, unless she voluntarily rejoins the union. So, Defendants conclude, the Court should dismiss this claim as moot because Plaintiff no longer has a personal stake in the outcome of this dispute, and she is unlikely to have such a personal stake in the future.

In short, Defendants' argument is seemingly that unions can: compel membership for up-to 11 months and 20 days from those wishing to resign, collect fees that it may not be entitled to, and avoid court intervention by paying off only those who file lawsuits. But the Third Circuit warned against nearly this exact scenario in Hartnett. As noted above, this Court must be "skeptical of a claim of mootness when a defendant . . . assures [the Court] that the case is moot because the injury will not recur, yet maintains that its conduct was lawful all along." Hartnett, 963 F.3d 306. Indeed, the Court must focus "on whether the defendant made that change unilaterally and so may 'return to [its] old ways' later on." Id. (quoting Friends of the Earth, 528 U.S. at 189). And when Defendants make these mootness arguments,

they bear a "heavy burden of persuading the court that there is no longer a live controversy." Id. at 305-06 (cleaned up).

Notably, Defendants' actions do not appear to contest these points. By all accounts, Defendants are still utilizing the WDEA's 10-day resignation structure for any public employee wishing to resign from their union, despite paying off Plaintiff here. Still, Defendants maintain that this dispute is moot because of their unilateral, post-filing actions.

In Hartnett, the Third Circuit held that District Courts are not "'roving commissions' charged with scrubbing invalid laws from the statute books." 963 F.3d at 308 (3d Cir. 2020) (quoting Broadrick v. Oklahoma, 413 U.S. 601, 610-11 (1973). Instead, the Court must "await a case where the parties earnestly dispute the validity or enforceability of" the statute at issue. Id.  But the Court only reached that conclusion in Hartnett because the parties agreed that the underlying statute was unconstitutional and would not be enforced in the future. Id. Here, the opposite appears true. The WDEA's resignation restrictions are still enforced today, and Defendants seemingly maintain that the statute is constitutional. Moreover, the WDEA's resignation window may still affect Plaintiff. If Plaintiff desires union representation in the future-- or, possibly, the present-- the WDEA's restrictive resignation scheme is undoubtedly a factor in weighing the pros and cons of union membership.

14

In short, the Court is not convinced that Defendants have met their "heavy burden" of showing mootness, particularly given the Court's need to be "reluctant" in accepting this argument. See id. at 306. The Court recognizes, however, that Hartnett was decided after the parties filed their current motions. Although some parties have had the opportunity to rely on Hartnett in their responsive briefs, that is not the case for all. So, the Court finds that it does not have the benefit of full briefing on this issue.

Relatedly, some Defendants argue that, if the Court declines to dismiss Plaintiff's prospective declaratory relief claims, then it should stay this matter pending the appeals in Smith, Fischer, and Thulen. The Court finds that this issue has also been inadequately addressed in the current briefs. Thus, the Court will reserve ruling on Defendants' Motion to Dismiss on Plaintiff's claims for prospective declaratory relief, Plaintiff's Cross-Motion, and Defendants' request to stay. The parties shall, instead, file a joint proposed briefing schedule within 14 days from the date of this opinion. The parties' briefs shall specifically address how Hartnett affects Plaintiff's remaining claims and Plaintiff's Cross Motion, and whether, if this claim is not dismissed, the Court should stay the case.

**III. CONCLUSION**

For the foregoing reasons, Defendants' Motions to Dismiss are GRANTED IN PART and DENIED IN PART. The Court reserves ruling on both the remaining portions of Defendants' Motions as well as Plaintiff's Cross-Motion for a Declaration of Violation of Constitutional Rights. An appropriate Order shall issue on this date.

Dated: November 30, 2020                    s/ Renée Marie Bumb
                                          RENÉE MARIE BUMB
                                          UNITED STATES DISTRICT JUDGE